IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VICTOR GUERRA,

        Petitioner,                No. CIV S-04-1344 JAM DAD P

    vs.

TOM L. CAREY,

        Respondent.         <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Petitioner is a state prisoner proceeding through counsel with an application for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of

conviction entered against him on April 25, 2002, in the Sacramento County Superior Court on

charges of kidnapping, assault with a firearm, corporal injury to a spouse, making terrorist

threats, vehicle theft, and receiving stolen property.  He seeks relief on the grounds that: (1) there

was insufficient evidence introduced at his trial to support his conviction on the charges of

kidnapping, assault with a firearm, corporal injury to a spouse, and making criminal threats; (2)

his right to a fair trial was violated by the trial court's failure to remove a juror for misconduct;

(3) his constitutional rights were violated when the trial court and counsel for both parties met

with a juror outside of petitioner's presence; and (4) the trial court violated his right to due

process by denying his motion for new trial.  Upon careful consideration of the record and the

1

1  applicable law, the undersigned will recommend that petitioner's application for habeas corpus

2  relief be denied.

3                    PROCEDURAL AND FACTUAL BACKGROUND[1]

4            Courtney Guerra married defendant seven years ago when she was
             15 years old.  They have two children.  Their marriage has had
5            many ups and downs.  This is a story of one of the downs.

6            As of April 14, 2001, defendant and Courtney[2] were living
             together, although they had reconciled only a couple weeks
7            preceding.  Courtney was working as a cocktail waitress at a strip
             club.  During her shift on April 14, she drank seven shots of
8            alcohol.  She testified she was "pretty intoxicated" by the time she
             got off work.  At the end of her shift, she left work with defendant
9            and his friend, Steve Johnson, to go to Johnson's home.

10           Courtney ran an errand and played some video games with Johnson
             that evening.  Later that night, defendant walked into the room and
11           punched Courtney in the face with his closed fist.  After he
             punched her, defendant yelled at Courtney about her seeing another
12           man while the two were separated.

13           After he hit her, defendant pulled out a gun, cocked it, stuck it in
             her face, and said, "You have just sealed your fate and are dead
14           now."  Courtney, however, testified she was not scared when he
             did this.  Later, Courtney admitted she told officers she was afraid
15           her husband was going to kill her the night of the attack.

16           Defendant also hit Courtney in the back, her head, and her arm.
             When asked to describe what defendant used to hit her, Courtney
17           testified, "I don't know, but I believe it was his gun."  On the issue
             of whether defendant used a gun, Courtney testified she saw
18           defendant with a gun earlier that day.  Courtney admitted she told a
             sheriff's deputy the night of the attack that the gun was a black
19           semiautomatic that may have been a .380 caliber.  On
             cross-examination, Courtney testified she was not sure defendant
20           hit her with a gun, but she did not believe defendant's fist would
             have split her head open the way her head got injured.  On
21           cross-examination, Courtney also admitted that she told a defense
             investigator she was not sure what defendant hit her with.  As to
22           the apparent contradiction between her trial testimony and what she

23  ─────────────────

24       [1]  The following summary is drawn from the May 9, 2003 opinion by the California Court
         of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 1-8, lodged in this court
25       on February 16, 2005.

26       [2]  We refer to Courtney Guerra as Courtney, not out of disrespect, but for simplicity and
         clarity.

                                           2

told the police, Courtney admitted her memory was fresher about the gun the night of the incident than it was the day she was testifying.

Courtney noticed she was bleeding. Johnson told defendant to get Courtney out of the room because she was bleeding all over the place. Johnson also said he did not want anything to "go down" in his house. Johnson told the two to leave his house.

According to Courtney, she and defendant left Johnson's house in part because Johnson did not want them there anymore. Courtney also testified she left the house because defendant forced her to leave. Defendant held her by the arm and told her to get into the car. Defendant ordered Courtney to sit on the floor of the car in the front seat. He sat Courtney down in the car and closed the door behind her.

Courtney thought defendant had a gun in his hand when he walked her out to the car because she felt it in her back. On cross-examination, Courtney stated it was something hard and could have been his knuckle or a finger. Courtney admitted telling the police officers the night of the assault that defendant had the gun pressed in her back so she had to go with him.

The two drove around for about an hour. They stopped at a McDonald's in Elverta where defendant looked at Courtney's head. Next, they drove to a gas station. When they got to the gas station, defendant told her if she "tried anything," he would kill her. Despite this warning, Courtney jumped out of the car and ran to a pay phone to call a friend. Courtney did not call the police. She was worried about her kids and about how defendant would not be able to help her kids if he were in jail. Defendant drove away.

When Courtney's friend picked her up and took her to the hospital, Courtney told the friend defendant had hit her in the head with a gun and had dragged her out of their friend's house.

At the hospital, Courtney gave a statement to Sacramento County Sheriff's Deputy Santos Ramos (now Detective Ramos). When Detective Ramos arrived, Courtney was in a fetal position in the hospital waiting room holding her legs. She looked scared, frightened, and very upset. Courtney told the detective she and her husband were going through a breakup and had a verbal altercation at a friend's house. The altercation turned physical. Courtney told Detective Ramos defendant hit her in the face with his fist. Then defendant grabbed her and started shaking her. Finally, Courtney told the officer defendant pulled out a gun, cocked it, pointed it at her face, and threatened her by saying "You've just sealed your fate. You are dead now." Courtney claimed she had been hit in the back of the head with the gun.

Courtney reported to the detective that defendant had forced her out of the friend's house at gunpoint. Courtney told the detective she left with defendant because she felt threatened by the fact that he had a gun at her back and that he would probably kill her.

Between April 21 and June 6, Courtney no longer lived with defendant although she did talk with him by telephone a few times. She saw him a few times, too. For a few days during that time period, she knew where he was staying, however, she did not report this to the police.

On June 6, Courtney got into an argument with defendant. Courtney had been drinking that day. As a result, Courtney called 911 to notify the police of where defendant was staying. While she was on the phone, defendant grabbed it out of Courtney's hand. Courtney got the telephone back, but defendant hit her in the mouth and busted her lip. She also got a cut on her neck.

Courtney saw her husband periodically between June 6 and August 11, 2001. On the August 11, defendant picked up Courtney in a Jeep Cherokee. Sacramento Police Officer Joseph Tippets saw the car stopped at a stoplight. Defendant was driving and Courtney was in the passenger's seat.

Officer Tippets ran the license plate on his computer, made a U-turn, and followed the Jeep until it parked. Defendant had parked the car the wrong way and told Courtney to park it correctly. When Officer Tippets approached the car, Courtney was in the driver's seat and defendant was walking away from the car. Courtney started to pull away from the curb. Officer Tippets ordered Courtney to stop and she complied. The steering column of the car was cracked open indicating to the officer the car had been stolen.

The owner of the car testified she never gave permission to anyone, including defendant, to drive her car. She did not know defendant and had never seen him before. The last time she saw her car before August 11, 2001, was the day before. At that time it was parked in front of her house, with the windows rolled up, and a club device on the steering wheel. She reported it stolen on August 11.

Courtney explained to the jury that the reason she was still with her husband that day was that "I know that really, deep down, he didn't real-he would lay his life down for me and at that time I had no one else. I had no place else to go. [¶] My parents wouldn't let me live with them. I lost everything. Lost my kids. I lost my house, my cars, everything; my jobs. I mean, really, the safest place I felt for me, if I was going to be out there on the streets or whatever, was with my husband."

/////

4

Courtney testified that her "mind has been gone since April."
Further, she testified that she had been "doing a lot of partying,"
including drinking alcohol, taking Vicodin and Valium.  Courtney
admitted lying to the police to protect defendant.

In his defense, defendant called an investigator who testified about
a number of contradictory statements made by Courtney in a
telephone interview.  Courtney told the investigator "I'm pretty sure
that [defendant] did not hit me with a weapon."  Courtney said she
did not see defendant with a gun at any time during their
altercation.  Courtney informed the investigator that defendant was
not the one who made her leave Johnson's house.  Courtney told
the investigator "[defendant] did not force me into the car;
[defendant] did not use a weapon of any kind to either hit me with
or force me into the car."  Courtney also told the investigator there
were many times she could have gotten out of the car during their
drive on April 14 and that defendant did not try to stop her from
leaving the car at the gas station.

It was clear to the investigator at the time she took the statement
that Courtney was concerned about her husband, the defendant.
She wanted him out of jail and wanted him in her children's lives.

Defendant also called Johnson as a witness.  Johnson testified that
when defendant and Courtney started to argue, he left the room.
Johnson denied ever seeing a gun in defendant's hands.  After the
fight escalated, Johnson stepped back into the room and asked
Courtney and defendant to leave.  Johnson did not see defendant
force Courtney into the car.

By consolidated information, the People charged defendant with
kidnapping (Pen.Code, § 207, subd. (a);[3] assault with a deadly
weapon (§ 245, subd. (a)(2)); two counts of infliction of corporal
injury on a spouse or cohabitant (§ 273.5, subd. (a)); criminal
threats (§ 422); vehicle theft (Veh.Code, § 10851, subd. (a));
receiving stolen property (§ 496d, subd. (a)); and false personation
(§ 529, subd. 3).  As to the charges for kidnapping, assault, the
initial infliction of corporal injury, and criminal threats, the
information alleged firearm enhancements.  (§§ 12022.5, subds.(a),
(a)(1) & (d), 12022.53, subd. (b).)

At trial, the court dismissed the false personation count based upon
lack of evidence without objection from the prosecution.  The jury
convicted defendant of the remaining counts and found each of the
firearm enhancements to be true.  The trial court sentenced
defendant to 16 years 8 months in state prison.

/////

---

[3]  All further statutory references are to the Penal Code unless otherwise indicated.

ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a

6

federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

II.  Petitioner's Claims

    A.  Sufficiency of the Evidence

        Petitioner's first claim is that the evidence introduced at his trial was insufficient to support his conviction on the charges of kidnapping, assault with a deadly weapon, and making criminal threats.  Specifically, petitioner contends there was insufficient evidence that he used a gun in the commission of these crimes.  (Traverse at 10.)  He argues:

> The use of a gun was an essential element of the above mentioned crimes for which Petitioner was convicted and sentenced.  Any rational trier of fact could not have determined beyond a reasonable doubt that a gun was actually used in the commission of any of those crimes.

(Id.)  Petitioner argues that Courtney's testimony with regard to whether he had a gun during the commission of the crimes was inconsistent and that there was no direct evidence he actually used a gun.  (Id.)

        The California Court of Appeal rejected petitioner's arguments regarding the sufficiency of the evidence in this regard, reasoning as follows:

> Relying on contradictions in the victim's testimony, defendant argues substantial evidence does not support his convictions for kidnapping, assault with a firearm, corporal injury to a spouse, and criminal threats.  We reject these claims.
>
> When a defendant challenges the sufficiency of the evidence to support a criminal conviction, " '[t]he test on appeal is whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt.  The

court must view the entire record in the light most favorable to the judgment (order) to determine whether it discloses substantial evidence-that is, evidence which is reasonable, credible, and of solid value-such that a reasonable trier of fact could find the [defendant] guilty beyond a reasonable doubt.  In making such a determination we must view the evidence in a light most favorable to respondent and presume in support of the judgment (order) the existence of every fact the trier could reasonably deduce from the evidence.  [Citations.]' [Citation.]"  (In re Paul C. (1990) 221 Cal.App.3d 43, 52, 270 Cal.Rptr. 369.)  "'Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.]  Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder.  [Citations.]'  "(People v. Ochoa (1993) 6 Cal.4th 1199, 1206, 26 Cal.Rptr.2d 23, 864 P.2d 103.)

"Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the jury."  (People v. Hicks (1982) 128 Cal.App.3d 423, 429, 180 Cal.Rptr. 391.)  With these standards in mind, we turn to each of the contentions raised by defendant.

Kidnapping

 Defendant asserts Courtney's testimony concerning the kidnapping is inherently incredible and does not provide substantial evidence to support his conviction for kidnapping.  We disagree. Section 207, subdivision (a), states:  "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping."

At trial, Courtney directly testified defendant forced her into the car against her will and drove her around for an hour.  Courtney believed that defendant had a gun, and that he put it in her back when he forced her into the car.  Based upon her seeing defendant with a gun earlier and the fact that the blows to her head split open her scalp, this assumption appears reasonable.  Courtney was unequivocal in her testimony that defendant made her get into the car and drove her around against her will.  Further, she testified he threatened her at the gas station if she tried anything.

Defendant's claim that Courtney's testimony was replete with inconsistencies and contradictions is unavailing because we do not second-guess the jury's resolution of credibility and fact questions.

(People v. Jones (1990) 51 Cal.3d 294, 314-315, 270 Cal.Rptr. 611, 792 P.2d 643.)  The fact that a defense investigator testified Courtney, while not under oath, made conflicting pretrial statements rendered her credibility a question for the jury.  (See People v. Ochoa, supra, 6 Cal.4th at p. 1206, 26 Cal.Rptr.2d 23, 864 P.2d 103 [credibility determinations are for the finder of fact].)  The question of whether Courtney was or was not angry at defendant the night of the first incident presents a similar credibility question.  The fact that Courtney conceded on cross-examination the object in her back might have been a finger or knuckle does not undermine the fact that defendant forced her into the car and drove her around for an hour.  Substantial evidence supports defendant's conviction for kidnapping.

Assault with a Firearm

Defendant contends the evidence was insufficient to establish defendant used a firearm when he assaulted Courtney.  We disagree.

Section 245, subdivision (a)(2), provides: "Any person who commits an assault upon the person of another with a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not less than six months and not exceeding one year, or by both a fine not exceeding ten thousand dollars ($10,000) and imprisonment."

In his attack on this count, defendant focuses on the conflicting testimony by Courtney concerning whether defendant hit Courtney with a gun.  Courtney saw defendant with a gun earlier that day.  While she was not certain defendant hit her with a gun, Courtney testified she believed he used a gun to hit her.  She felt the object that he hit her with and surmised it was a gun from the way it split open her scalp.  On the night of the incident, she described the gun to the responding officer at the hospital in detail.  Shortly after defendant struck her with the gun, he put it in her face, cocked it, and threatened her life with it.  Further, Courtney felt something like a gun in her back when she was forced to the car after the altercation.  This testimony provided substantial evidence that defendant assaulted Courtney with a gun.  The conflicting statements to the defense investigator were simply issues for the jury to consider in determining whether to credit Courtney's testimony.  (People v. Jones, supra, 51 Cal.3d at pp. 314-315, 270 Cal.Rptr. 611, 792 P.2d 643.)

Infliction of Corporal Injury on a Spouse

Defendant argues there is no substantial evidence to support his conviction for infliction of corporal injury on a spouse because Courtney testified she lied to the police many times.  We reject this claim.

Section 273.5 provides in relevant part, "Any person who willfully inflicts upon a person who is his or her spouse, former spouse, cohabitant, former cohabitant, or the mother or father of his or her child, corporal injury resulting in a traumatic condition, is guilty of a felony."

Here, Courtney testified that defendant split her lip and cut her neck as she tried to call 911. Further, the jury heard the tape of the 911 emergency call and presumably some of the interaction between Courtney and defendant. This provided circumstantial evidence to support Courtney's account of her injuries. Courtney's credibility was for the jury to determine. Substantial evidence exists to support this conviction.

Criminal Threat

On this count, defendant argues his conviction should be overturned because Courtney testified that she was not frightened of her husband when he pulled out the gun, cocked it, put it in her face, and threatened her. We reject this claim.

Section 422 provides, "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

"In order to establish a section 422 violation, the prosecution must establish (1) that the defendant had the specific intent that his statement would be taken as a threat (whether or not he actually intended to carry the threat out), and (2) that the victim was in a state of 'sustained fear.' The prosecution must additionally show that the nature of the threat, both on 'its face and under the circumstances in which it is made,' was such as to convey to the victim an immediate prospect of execution of the threat and to render the victim's fear reasonable." (People v. Garrett (1994) 30 Cal.App.4th 962, 966-967, 36 Cal.Rptr.2d 33.)

Here, the night of the incident, Courtney reported to the responding police officer she was scared defendant would kill her. Courtney told the officer she left Johnson's house with defendant because she

10

1    felt threatened by the fact he had a gun and that she was afraid he
     would kill her.
2
     The objective evidence also supported a finding that Courtney was
3    frightened.  When the officer arrived at the hospital, Courtney was
     sitting in the emergency room, curled up in the fetal position.  To
4    that officer, she appeared scared, frightened, and very upset.  The
     jury saw and heard Courtney's direct testimony to the contrary and
5    was entitled to decide whether Courtney was frightened or not.

6    Courtney testified that she had lied to the police to protect her
     husband.  Given her stated desires to avoid further punishment to
7    her husband and the father of her children, it is not inconceivable
     she was shading the truth when she testified she was not frightened
8    when her husband pulled out his gun, pointed it at her, and
     threatened her.  In addition, Courtney testified that her memory of
9    the event was fresh the day it happened and not so fresh the day she
     was testifying, lending more credibility to her initial reports to the
10   police.

11   On this record, the jury was entitled to resolve the conflict in the
     evidence and decide that Courtney felt fear when she was
12   confronted by her husband who had just punched her in the face
     with his fist, pistol-whipped her, and pointed a gun at her while
13   threatening her life.

14   (Opinion at 9-15.)

15          The Due Process Clause of the Fourteenth Amendment "protects the accused

16   against conviction except upon proof beyond a reasonable doubt of every fact necessary to

17   constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).  There

18   is sufficient evidence to support a conviction if, "after viewing the evidence in the light most

19   favorable to the prosecution, any rational trier of fact could have found the essential elements of

20   the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  See also

21   Prantil v. California, 843 F.2d 314, 316 (9th Cir. 1988).  "[T]he dispositive question under

22   Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a

23   reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443

24   U.S. at 318).  "A petitioner for a federal writ of habeas corpus faces a heavy burden when

25   challenging the sufficiency of the evidence used to obtain a state conviction on federal due

26   process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274, 1275 & n.13 (9th Cir. 2005).  In order

11

1   to grant the writ, the federal habeas court must find that the decision of the state court reflected

2   an objectively unreasonable application of Jackson and Winship to the facts of the case.  Id.

3           The court must review the entire record when the sufficiency of the evidence is

4   challenged in habeas proceedings.  Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985),

5   vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is

6   the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

7   reasonable inferences from basic facts to ultimate facts."  Jackson, 443 U.S. at 319.  If the trier of

8   fact could draw conflicting inferences from the evidence, the court in its review will assign the

9   inference that favors conviction.  McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994).  The

10   relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether

11   the jury could reasonably arrive at its verdict.  United States v. Mares, 940 F.2d 455, 458 (9th

12   Cir. 1991).  Thus, "[t]he question is not whether we are personally convinced beyond a

13   reasonable doubt.  It is whether rational jurors could reach the conclusion that these jurors

14   reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas court

15   determines sufficiency of the evidence in reference to the substantive elements of the criminal

16   offense as defined by state law.  Jackson, 443 U.S. at 324 n.16; Chein, 373 F.3d at 983.

17           Viewing the evidence in the light most favorable to the verdict, and for the

18   reasons described by the California Court of Appeal, the undersigned concludes that there was

19   sufficient evidence from which a rational trier of fact could have found beyond a reasonable

20   doubt that petitioner was guilty of kidnapping, assault with a deadly weapon, and making

21   criminal threats.  As noted by the state appellate court, there was likewise substantial evidence

22   introduced at petitioner's trial to the effect that he used a gun in the commission of these crimes.

23   The fact that there was also evidence from which a jury could have concluded that petitioner did

24   not use a gun, or that some of the evidence regarding the presence of a gun was circumstantial, is

25   irrelevant.  As explained by the state appellate court, the jury was responsible for evaluating the

26   credibility of the witnesses and was entitled to rely on evidence indicating that petitioner used a

1   gun in the commission of the crimes.  The state court opinion rejecting petitioner's claims in this

2   regard is a reasonable construction of the evidence in this case and is not contrary to or an

3   objectively unreasonable application of federal law.  See Woodford v. Visciotti, 537 U.S. 19, 25

4   (2002); see also 28 U.S.C. § 2254(d)(1).  Accordingly, petitioner is not entitled to habeas relief

5   on his claim of insufficient evidence.

6          B.   Juror Misconduct

7                 Petitioner's second claim is that the trial court's failure to remove a juror for

8   misconduct violated his right to a fair trial, trial by jury and "confrontation."  (Pet. at 5; Traverse

9   at 13.)  He explains:

10                 A juror conducted independent research, inquired into matters that
                   were not evidence, brought outside evidence into the jury room,
11                 and injected his own expertise into the deliberations.

12   (Pet. at 5.)

13                 The California Court of Appeal concluded that petitioner waived this claim on

14   appeal, reasoning as follows:

15                 Defendant claims his convictions should be reversed because "the
                   trial court erred prejudicially by failing to remove a juror for
16                 misconduct."  Defendant waived this error by failing to object
                   when it was brought to the court's attention.

17
                   At trial, the court encouraged jurors to write down any questions
18                 they might have during the trial and provide them to the court for
                   review.  After defendant's attorney rested his closing argument, one
19                 of the jurors wrote a note to the trial judge.  The note asked if "[i]s
                   it legally permitted to ask (as a juror) & is this an OK time (or too
20                 late) whether the Sacramento Child Protective Services department
                   is now or has been in contact with the [defendant] & [the victim]
21                 over the care, conditions & custody of the children?"  Further, the
                   juror's note stated the juror had not discussed the case with anyone
22                 else, but in "trying to understand [the victim] (as a witness-an
                   important one), the term 'Stockholm Syndrome' hit me as a
23                 possible framework & reference as to who is this person & how
                   can we view/believe/disbelieve this witness."  The juror's note
24                 attached an excerpt from the Internet discussing the syndrome
                   which describes how victims of violent crimes may sometimes
25                 identify with and protect their captors.  The juror asked whether it
                   would be permissible to bring the excerpt into the jury room as a
26                 "discussion item."  The juror closed the note with a statement that

the juror did not want to violate court rules and wanted the court's direction.

The trial court held a hearing concerning this issue.  The court explained that sometimes jurors do not always get all of the information they would like to decide the case, either for tactical reasons or because it is inadmissible.  The court explained the law requires the jurors to decide the case based upon the information received at trial.  The court informed the juror it would be misconduct for the juror to talk about Child Protective Services or Stockholm Syndrome in the jury room because that evidence had not been produced during the trial.  The court asked the juror "Do you feel that you're going to be able to decide this case just on the evidence here, applying common sense and not become some kind of an expert or some such thing in the jury room on Stockholm syndrome or any of that kind of-[¶]-similar consideration."  The juror responded in the affirmative.  The juror told the court the reason he had written the note was because he was unsure of the rules.  Now that the court had clarified that for him, he respected the court's ruling and had no problems with the court's directions.  The juror agreed when the court assured both sides "that [he was] still prepared to go into that jury room, discuss and decide this case only on the evidence, after listening to the viewpoints of [his] fellow jurors and applying the law [the court would] state to [him]."

At the conclusion of this hearing, the People reported no objection to leaving the juror on the panel.  When asked if he was satisfied with leaving the juror on the jury, defense counsel said, "I think I could.  [¶]  I will probably want a minute with my client to explain to him what happened this morning."

After final arguments and instructions, the prosecutor told the court defendant was out of the room during the examination of the juror and that defense counsel "is prepared to just put on the record a waiver for that."  Defense counsel told the court, "Yes, I will ex post facto waive [defendant's] presence for that session."

"Defendant correctly observes that, although the juror did nothing improper, his inadvertent receipt of information outside the court proceedings is considered 'misconduct' and creates a presumption of prejudice which, if not rebutted, requires a new trial.  [Citation.]  '"[W]hether a defendant has been injured by jury misconduct in receiving evidence outside of court necessarily depends upon whether the jury's impartiality has been adversely affected, whether the prosecutor's burden of proof has been lightened and whether any asserted defense has been contradicted.  If the answer to any of these questions is in the affirmative, the defendant has been prejudiced and the conviction must be reversed.  On the other hand, since jury misconduct is not per se reversible, if a review of the entire record demonstrates that the appellant has suffered no

1
2
3
4

prejudice from the misconduct a reversal is not compelled."
[Citation.]'  [Citations.]"  (<u>People v. Zapien</u> (1993) 4 Cal.4th 929,
994, 17 Cal.Rptr.2d 122, 846 P.2d 704.)  However, the failure to
contemporaneously object to juror misconduct, once it has been
discovered, waives this issue on appeal.  (<u>People v. Wisely</u> (1990)
224 Cal.App.3d 939, 947-948, 274 Cal.Rptr. 291.)

5
6
7
8
9

Here, the defense was fully advised of the misconduct in the
context of the juror's letter and his examination by the court at the
hearing attended by defendant's attorney.  Defense counsel raised
no objection to the retention of this juror and in fact affirmatively
stated he thought he could leave the juror on the panel and that he
wanted to explain it to his client.  Later, defense counsel
affirmatively waived his client's appearance at the hearing on this
issue, waiving his objection to the juror's misconduct.  This
challenge is therefore waived.

10    (Opinion at 15-18.)

11        Respondent contends that the state appellate court's decision constitutes a

12    procedural bar precluding this court from addressing the merits of petitioner's claim of juror

13    misconduct.  (Answer at 18.)  Alternatively, he argues that the claim should be rejected on the

14    merits.  (<u>Id.</u>)  The court will address both of these contentions below.

15        1. <u>Procedural Default</u>

16        State courts may decline to review a claim based on a procedural default.

17    <u>Wainwright v. Sykes</u>, 433 U.S. 72, 81-82 (1977).  As a general rule, a federal habeas court "'will

18    not review a question of federal law decided by a state court if the decision of that court rests on

19    a state law ground that is independent of the federal question and adequate to support the

20    judgment.'"  <u>Calderon v. United States District Court (Bean)</u>, 96 F.3d 1126, 1129 (9th Cir. 1996)

21    (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991)).  The state rule for these purposes is

22    only "adequate" if it is "firmly established and regularly followed."  <u>Id.</u> (quoting <u>Ford v.</u>

23    <u>Georgia</u>, 498 U.S. 411, 424 (1991)).  <u>See also</u> <u>Bennett v. Mueller</u>, 322 F.3d 573, 583 (9th Cir.

24    2003) ("[t]o be deemed adequate, the state law ground for decision must be well-established and

25    consistently applied.")  The state rule must also be "independent" in that it is not "interwoven

26    with the federal law."  <u>Park v. California</u>, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting <u>Michigan</u>

15

1  v. Long, 463 U.S. 1032, 1040-41 (1983)).  Even if the state rule is independent and adequate, the

2  claims may be reviewed by the federal court if the petitioner can show:  (1) cause for the default

3  and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to

4  consider the claims will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at

5  749-50.

6        Respondent has met his burden of adequately pleading an independent and

7  adequate state procedural ground as an affirmative defense.  See Bennett, 322 F.3d at 586.

8  Petitioner does not deny that his trial counsel did not raise a contemporaneous objection to the

9  retention of Juror No. 10 on the panel.[4]  On the contrary, the record reflects that counsel informed

10  the trial judge he "thought" he could accept Juror No. 10 and then never returned to the subject

11  again.[5]

12        Petitioner has also failed to meet his burden of asserting specific factual

13  allegations demonstrating the inadequacy of California's contemporaneous-objection rule as

14  unclear, inconsistently applied or not well-established, either as a general rule or as applied to

15  him.  Bennett, 322 F.3d at 586; Melendez v. Pliler, 288 F.3d 1120, 1124-26 (9th Cir. 2002).

16  Petitioner's claim is therefore procedurally barred.  See Coleman, 501 U.S. at 747; Harris v.

17  Reed, 489 U.S. 255, 264 n.10 (1989); Paulino v. Castro, 371 F.3d 1083, 1092-93 (9th Cir. 2004)

18  (claim that defendant's due process rights were violated by the trial court's failure to instruct sua

19  sponte on the definition of "major participant" was procedurally barred because counsel failed to

20  make a contemporaneous objection to the instruction at trial).  Petitioner has failed to

21  demonstrate that there was cause for his procedural default or that a miscarriage of justice would

22

23        [4] Petitioner refers to the juror in question as "Juror No. 10," and this court will do the same.  See Traverse at 13.

24        [5] Petitioner notes that his trial counsel informed the trial judge he would "probably want"
25  to explain to petitioner what had occurred with regard to Juror No. 10.  (Traverse at 16.)
   However, he  concedes that the record is "silent on whether or not [petitioner] consulted with his
26  attorney on the matter."  (Id.)  The record also reflects no objection raised to the retention of
   Juror No. 10 on the jury panel, either by petitioner or his counsel.

1    result absent review of the claim by this court.  See Coleman, 501 U.S. at 748; Vansickel v.

2    White, 166 F.3d 953, 957-58 (9th Cir. 1999).  The court is therefore precluded from considering

3    the merits of this claim.

4                    2.  Merits of Claim of Juror Misconduct

5                    Even were this claim not procedurally barred, for the following reasons it lacks

6    merit and should be denied.

7                    The Sixth Amendment right to a jury trial "guarantees to the criminally accused a

8    fair trial by a panel of impartial, 'indifferent' jurors."  Irvin v. Dowd, 366 U.S. 717, 722 (1961).

9    Due process requires that the defendant be tried by "a jury capable and willing to decide the case

10   solely on the evidence before it."  Smith v. Phillips, 455 U.S. 209, 217 (1982).  See also United

11   States v. Plache, 913 F.2d 1375, 1377-78 (9th Cir. 1990).  Jurors are objectionable if they have

12   formed such deep and strong impressions that they will not listen to testimony with an open

13   mind.  Irvin, 816 U.S. at 722 n.3.  A defendant is denied the right to an impartial jury if even one

14   juror is biased or prejudiced.  Dyer v. Calderon, 151 F.3d 970, 973 (9th Cir. 1998) (en banc);

15   United States v. Eubanks, 591 F.2d 513, 517 (9th Cir. 1979).  Thus, "[t]he presence of a biased

16   juror cannot be harmless; the error requires a new trial without a showing of actual prejudice."

17   United States v. Gonzalez, 214 F.3d 1109, 1111 (9th Cir. 2000) (quoting Dyer, 151 F.3d at 973

18   n.2).

19                   As the Ninth Circuit has explained, "evidence developed against a defendant must

20   come from the witness stand."  Fields v. Brown, 503 F.3d 755, 779 (9th Cir. 2007).  When the

21   jury breaches its duty to decide the case based solely on the evidence introduced at trial, by

22   considering extraneous facts not introduced in evidence, "a defendant has effectively lost the

23   rights of confrontation, cross-examination, and the assistance of counsel with regard to jury

24   consideration of the extraneous evidence."  Hughes v. Borg, 898 F.2d 695, 699 (9th Cir. 1990)

25   (quoting Gibson v. Clanon, 633 F.2d 851, 854 (9th Cir.1980)).  However, "the extent, if at all, to

26   which the jurors saw or discussed the extrinsic evidence," is a question of historical fact as to

                                                    17

1   which the state court's findings are entitled to a presumption of correctness.  Dickson v. Sullivan,

2   849 F.2d 403, 406 (9th Cir. 1988).  See also 28 U.S.C. § 2254(e).

3          It is clearly established federal law that prejudicial extraneous influences on a jury

4   constitutes misconduct which may result in the reversal of a conviction.  Parker v. Gladden, 385

5   U.S. 363, 364-65 (1966) (bailiff's prejudicial comments warranted reversal).  However, "[o]n

6   collateral review, trial errors-such as extraneous information that was considered by the jury-are

7   generally subject to a 'harmless error' analysis, namely, whether the error had 'substantial and

8   injurious' effect or influence in determining the jury's verdict."  Estrada v. Scribner 512 F.3d

9   1227, 1235 (9th Cir. 2008) (citing Jeffries v. Wood, 114 F.3d 1484, 1491 (9th Cir. 1997)) (citing

10  Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).  See also Rushen v. Spain, 464 U.S. 114, 115-

11  19 & n.3 (1983) (affirming state court's determination that a juror's ex parte communication with

12  trial judge was harmless beyond a reasonable doubt); Thompson v. Borg, 74 F.3d 1571, 1576

13  (9th Cir. 1996) (applying "harmless-error" standard when a venire member stated during voir

14  dire that he had read in a newspaper that the defendant had "pleaded guilty at one time and

15  changed it").  Cf. Caliendo v. Warden of California Men's Colony, 365 F.3d 691, 695-98 (9th

16  Cir. 2004) (recognizing that United States Supreme Court jurisprudence requires courts to

17  presume prejudice in cases involving unauthorized contact between a juror and a witness, an

18  interested party, or the officer in charge).

19          Several factors are relevant to determining whether the alleged introduction of

20  extrinsic evidence constitutes reversible error: (1) whether the extrinsic material was actually

21  received, and if so, how; (2) the length of time it was available to the jury; (3) the extent to which

22  the jury discussed and considered it; (4) whether the material was introduced before a verdict was

23  reached, and if so, at what point in the deliberations it was introduced; and (5) any other matters

24  which may bear on the issue of whether the introduction of extrinsic material substantially and

25  injuriously affected the verdict.  Estrada, 512 F.3d at 1238.  See also Sassounian v. Roe, 230 F.3d

26  1097, 1109 (9th Cir. 2000).

1    The California Court of Appeal concluded that Juror No. 10's receipt of

2    extraneous information constituted misconduct, but did not analyze whether petitioner suffered

3    prejudice because it found the claim had been waived.  (Opinion at 17-18.)  After an independent

4    review of the record, this court concludes that petitioner did not suffer prejudice as a result of

5    Juror No. 10's actions.  There is no evidence before the court that the other jurors actually

6    received any information or entered into any discussions during the deliberations regarding

7    Stockholm Syndrome or Child Protective Services.  Juror No. 10 assured the trial judge that he

8    would not consider these topics himself in reaching a verdict and promised that he would not

9    introduce these matters into the deliberations.  There is no indication that he failed to fulfill these

10   promises.  In addition, petitioner's jury was instructed as follows:

11           Don't do any independent legal research.  Don't look in the
             dictionary for definition of terms that may be in these instructions.
12           Don't look in the encyclopedia.  Don't talk to anybody about this
             case.  As I've said repeatedly, you've got to decide this case only
13           on what you've heard in the courtroom.

14   (Reporter's Transcript on Appeal (RT) at 545.)  The jurors are presumed to have followed the

15   court's instruction.   Penry v. Johnson, 532 U.S. 782, 799 (2001).

16           Petitioner argues that the presumption of prejudice resulting from the misconduct

17   of Juror No. 10 has not been rebutted.  (Traverse at 17-18.)  He argues that once Juror No. 10

18   considered extraneous information bearing on the credibility of key prosecution witness Courtney

19   Guerra, he was unable to be impartial.  Petitioner contends that "the moment Juror 10 went

20   home, did independent research on Stockholm Syndrome and read the information in the article,

21   bias became inherent."  (Id. at 18.)  He also notes that juror No. 10 became the jury foreman and

22   therefore had influence over all of the jurors.  (Id.)

23           The court rejects these arguments.  As explained above, there is no evidence that

24   Juror No. 10 mentioned Stockholm Syndrome or Child Protective Services during the

25   deliberations or that the jurors discussed these matters in any way.  Cf. Thompson v. Borg, 74

26   F.3d 1571, 1574 (9th Cir. 1996) (quoting Marino v. Vasquez, 812 F.2d 499, 504 (9th Cir. 1987))

1  ("[j]uror misconduct typically occurs when a member of the jury has <u>introduced into its</u>

2  <u>deliberations</u> matter which was not in evidence or in the instructions") (emphasis added).   There

3  is also no evidence that Juror No. 10's status as the jury foreman had an undue influence on the

4  votes of the other jurors.  Petitioner suggests that Juror No. 10 formed a bias against petitioner

5  after reading information on Child Protective Services and Stockholm Syndrome and then

6  communicated that bias to the other jurors without actually discussing these topics during the

7  deliberations.  This contention is based on pure speculation and cannot support a finding of

8  prejudice.  The court also rejects petitioner's argument that Juror No. 10 would not have been

9  able to decide the case based solely on the evidence introduced at trial.  There is no evidence that

10  he failed to do this, and he specifically assured the trial judge that he could.

11         There has been no showing suggesting that the information considered by Juror

12  No. 10 prior to the start of deliberations had a "substantial and injurious effect or influence in

13  determining the jury's verdict."  <u>Brecht</u>, 507 U.S. at 637.  There is also no evidence of actual or

14  implied bias on the part of Juror No. 10.  Accordingly, petitioner is not entitled to relief on this

15  claim.

16         C.  <u>Right to be Present</u>

17         Petitioner claims that his right to be present at all significant court proceedings

18  was violated when he was not allowed to be present during the hearing conducted to inquire into

19  Juror No. 10's misconduct.  (Pet. at 6.)  The California Court of Appeal rejected this claim with

20  the following reasoning:

21              Defendant next argues because he was outside of the courtroom
             when the hearing with the juror was taking place, his conviction
22              must be overturned.  He bases this error solely on the United States
             Constitution.  We reject his contention.
23
             Defendant relies on <u>Campbell v. Rice</u> (9th Cir. 2002) 302 F.3d
24              892.  There, the trial court conducted an in camera hearing with the
             prosecutor and the defense attorney to address defense counsel's
25              potential conflict of interest.  (<u>Id.</u> at p. 895.)  Defendant was not
             allowed to attend the hearing, was not represented at the hearing,
26              nor was he given notice of it.  (<u>Ibid.</u>)  The Ninth Circuit explained

the "'defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.'" (Id. at p. 898.) Further, the court stated, "[r]eversal is automatic if the defendant's absence constitutes a 'structural error,' that is, an error that permeates '[t]he entire conduct of the trial from beginning to end,' or 'affect[s] the framework within which the trial proceeds.' [Citation.]" (Ibid.) "In contrast, we must conduct harmless error review if the defendant's absence constitutes a 'trial error,' that is, an error which 'occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt.' [Citation.]" (Ibid.)

The Ninth Circuit concluded this hearing constituted a critical stage of the criminal proceedings: "[I]f defense counsel's representation is hampered by a conflict of interest, the integrity of the adversary system is cast into doubt because counsel cannot 'play[ ] the role necessary to ensure that the trial is fair.'" (Campbell v. Rice, supra, 302 F.3d at pp. 898-899.) Further, the court concluded the defendant would have contributed to the fairness of the proceedings because, at the in chambers hearing, no one was representing the defendant's interests. (Id. at p. 899.) The court noted that had the defendant or a separate attorney appointed to represent the defendant been present, the defendant or the attorney could have asked more questions to fully flush out the nature of the conflict of interest. (Ibid.) The court concluded this error constituted structural error because the defendant would have been able to influence the process in a significant way and the exclusion of the defendant from this critical hearing affected the proceedings from beginning to end and required reversal. (Id. at pp. 899-900.)

Our own precedent, while phrased in slightly different language, is in accord with the general outline of the substantive right analyzed by the Ninth Circuit. "A criminal defendant's federal constitutional right to be present at trial, largely rooted in the confrontation clause of the Sixth Amendment, also enjoys protection through the due process clause of the Fifth and Fourteenth Amendments [citation] "'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge," ' but not "'when presence would be useless, or the benefit but a shadow.'" [Citation.]" (People v. Ochoa (2001) 26 Cal.4th 398, 433, 110 Cal.Rptr.2d 324, 28 P.3d 78.)

In People v. Ochoa, supra, 26 Cal.4th at page 433, 110 Cal.Rptr.2d 324, 28 P.3d 78, the defendant claimed his absence at sidebar conferences to discuss confidential juror questionnaires for potential jurors violated his federal and state constitutional and statutory rights. In rejecting this claim, the California Supreme

Court stated, "Defendant has not indicated any way in which his presence at the sidebar conferences bore a reasonably substantial relation to his opportunity to defend himself.  He admits the impossibility of knowing what sudden impressions and unaccountable prejudices he might have formed.  Because there must be a 'reasonably substantial relation' to defendant's ability to defend himself, and not a mere 'shadow' benefit, we must reject such claims based on undue speculation."  (Ibid.)

In People v. Holt (1997) 15 Cal.4th 619, 706-707, and footnote 29, 63 Cal.Rptr.2d 782, 937 P.2d 213, the defendant was excluded from a number of conferences at his trial, including an in chambers examination of a juror.  The defendant argued, "that his absence from proceedings at which evidentiary motions, the admissibility of his statement, and a possible objection to an anticipated question by the prosecutor were discussed, denied him his Sixth Amendment right to confront the evidence against him, an interference with his opportunity for effective cross-examination.  He also claims that conducting the proceedings in his absence resulted in a trial in which the Sixth Amendment goal of both the perception and the reality of fairness was not met and which violated the due process guaranty of the Fourteenth Amendment."  (Id. at p. 707, 63 Cal.Rptr.2d 782, 937 P.2d 213.)  In rejecting these federal constitutional claims, the Holt court concluded, "There is no indication that defendant's presence at these proceedings might have had any impact....  The proceedings were routine.  Defendant fails to demonstrate that, as a result of the in-chambers discussions or sidebar conferences his ability to confront evidence and cross-examine witnesses was affected in any manner."  (Ibid.)

Here, defendant claims that despite his attorney's acquiescence, defendant " might " not have been willing to keep this juror on the panel.  Further, he claims he would have been able to "confer" with his attorney about whether he wished to proceed.  He claimed it was "reasonably probable" he would have objected to the presence of the juror on the panel.  These post hoc contentions are simply insufficient to establish constitutional error.  Defendant's absence from the hearing did not preclude a subsequent conference and considered determination of what position to take on the juror.

Further, these contentions do not suggest defendant would have been successful in obtaining either removal of the juror or a mistrial.  This is especially true given the fact that the juror claimed under oath that he would decide the case solely on the evidence and law provided to him at trial.  We thus conclude defendant's presence at this hearing would not have had a reasonably substantial relation to his ability to defend against the charges.  (See People v. Johnson (1993) 6 Cal.4th 1, 17-20, 23 Cal.Rptr.2d 593, 859 P.2d 673.)  Rather, the benefit of his presence would have been but a shadow.  Defendant's ability to confront the

evidence or cross-examine witnesses was not affected in any manner.

Further, unlike the facts of Campbell v. Rice, supra, 302 F.3d 892, an attorney represented defendant at this hearing and actively protected his rights. This solitary minor exclusion of defendant from a hearing out of the presence of the jury did not affect the trial from beginning to end. Nor did it affect defendant's ability to defend himself. We conclude defendant's absence does not create reversible error.

(Opinion at 19-23.)[6]

Under federal law, a criminal defendant charged with a felony offense has a fundamental right to be present at every stage of the trial. Illinois v. Allen, 397 U.S. 337, 338 (1970). See also Kentucky v. Stincer, 482 U.S. 730, 745 (1987) ("a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure"). This right derives from the Confrontation Clause of the Sixth Amendment and the Due Process Clauses of the Fifth and Fourteenth Amendments. United States v. Gagnon, 470 U.S. 522, 526 (1985). However,"th[e] privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow.'" Stincer, 482 U.S. at 745 (quoting Snyder v. Massachusetts, 291 U.S. 97, 106-07 (1934)). See also Gagnon, 470 U.S. at 527 (defendants' absence did not violate the Due Process Clause where their presence was not needed to "ensure fundamental fairness" and they could not have added to or gained from being present at the conference); Campbell, 408 F.3d at 1172-73 (violation of petitioner's due process rights by his exclusion from private in-chambers hearing where the trial court concluded that his attorney did not have a conflict of interest was harmless error). The right to be present, like many other constitutional rights, may be waived. See Gagnon, 470 U.S. at 529; Taylor v. United States, 414 U.S. 17, 19-20 (1973).

---

[6] Subsequent to the decision of the California Court of Appeal, the Ninth Circuit granted rehearing en banc in Campbell v. Rice. After a rehearing, the court concluded that any violation of the right to be present is trial error, subject to harmless error review. Campbell v. Rice, 408 F.3d 1166, 1172 (9th Cir. 2005).

23

1          The California Court of Appeal correctly concluded that the denial of the right to

2    be present alleged by petitioner was subject to harmless error review.  See Rushen, 464 U.S. at

3    117 (defendant's exclusion from ex parte communication between the judge and a juror was a

4    trial error that was subject to harmless error analysis); Hovey v. Ayers, 458 F.3d 892, 903 (9th

5    Cir. 2006) (petitioner's exclusion from competency hearing was harmless); Campbell, 408 F.3d

6    at 1172.  Conducting such review, the state appellate court concluded that petitioner's absence

7    from the trial court's discussion with Juror No. 10 was harmless because petitioner's presence

8    was not necessary to ensure a fair trial.  This decision is consistent with federal law in this area

9    and should not be set aside.  As noted by the state appellate court, petitioner's counsel was

10   present at the hearing where the juror was questioned and assured the court that he would decide

11   the case solely on the evidence presented in court and stated that he had inquired in advance as to

12   the other matters only because he wanted to be sure of the rules that governed jury deliberations.

13   At the conclusion of that hearing petitioner's trial counsel acquiesced in the juror remaining on

14   the panel.  If counsel, after consulting with petitioner or otherwise, had later changed his mind

15   about the willingness to proceed with Juror No. 10 on the jury, he would have notified the trial

16   judge. He did not do so.

17          In any event, there is no reason to believe that a different result would have

18   ensued if petitioner had been present at the hearing.  The judge's advice and admonition to Juror

19   No. 10 was not incorrect, misleading, or unfair.  The juror stated under oath that he would decide

20   the case solely on the evidence introduced at trial and on the law as provided by the court in its

21   instructions.  There is no showing that the juror did otherwise.  Assuming arguendo that

22   petitioner's counsel did not validly waive petitioner's right to be present at the hearing, there is

23   no evidence that petitioner's absence from the conversation with Juror No. 10 resulted in a

24   miscarriage of justice in this case.  Accordingly, petitioner is not entitled to relief on this claim.

25   /////

26   /////

24

D.  Motion for New Trial

Petitioner's final claim is that his right to due process was violated by the trial's court's denial of his motion for new trial.  He explains:

> Defendant brought a motion for new trial based on newly discovered evidence.  New evidence, specifically, was the victim was using methamphetamine.

(Pet. at 6.)

The California Court of Appeal rejected petitioner's argument in this regard, reasoning as follows:

> Defendant next argues the trial court erred in denying his motion for a new trial.  We disagree.
>
> Defendant moved for a new trial based upon alleged newly discovered evidence Courtney had been under the influence of methamphetamine on the date defendant beat her and forced her into the car.  The motion was also based upon the alleged newly discovered fact that Courtney had lied about defendant's use of a gun that day.  The trial court concluded the evidence of the lack of a gun was consistent with the evidence presented to the jury by the defense investigator.  Further, the trial court found "That she may have been under the influence of methamphetamine, wouldn't have made a bit of difference."  On appeal, defendant only raises the issue of methamphetamine use.
>
> "'"The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears."'" [Citations.]"  (People v. Delgado (1993) 5 Cal.4th 312, 328, 19 Cal.Rptr.2d 529, 851 P.2d 811.)
>
> Section 1181, provides in relevant part: "When a verdict has been rendered or a finding made against the defendant, the court may, upon his application, grant a new trial, in the following cases only: [¶]  8.  When new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial.  When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as, under all circumstances of the case, may seem reasonable."

/////

25

"In ruling on a motion for new trial based on newly discovered evidence, the trial court considers the following factors: "'1. That the evidence, and not merely its materiality, be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on a retrial of the cause; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits.'" [Citations.]" (People v. Delgado, supra, 5 Cal.4th at p. 328, 19 Cal.Rptr.2d 529, 851 P.2d 811.) Further, "'the trial court may consider the credibility as well as materiality of the evidence in its determination [of] whether introduction of the evidence in a new trial would render a different result reasonably probable.' [Citation.]" (Id. at p. 329, 19 Cal.Rptr.2d 529, 851 P.2d 811.) "[T]he trial court is in the best position to determine the genuineness and effectiveness of the showing in support of the motion [citation]." (People v. Minnick (1989) 214 Cal.App.3d 1478, 1481, 263 Cal.Rptr. 316.) "That is especially so where the new evidence and its effect on a prior finding involved the credibility of a key witness. [Citation.] While a reviewing court defers to the superior court judge's assessment regardless of whether the new evidence is presented live or by affidavit [citation], added deference seems in order where the judge has heard the witness testify live. The judge's perspective in that case cannot be replicated on appeal." (People v. Bishop (1993) 14 Cal.App.4th 203, 213, 17 Cal.Rptr.2d 657.)

Here, the jury and the trial court heard about the substantial amount of alcohol Courtney consumed the day of the beating and the kidnapping (seven shots) and her admission that she was "pretty intoxicated" when she got off work. Further, they heard Courtney had a history of drinking alcohol, taking Valium and ingesting Vicodin. In addition, the jury heard Courtney testify her "mind has been gone since April" because of this drug and alcohol abuse. Courtney admitted to lying to the police to protect her husband. The jury and the trial court heard a number of directly contradictory statements made by Courtney to the defense investigator.

Given the substantial evidence already in the record concerning Courtney's credibility, we have no difficulty sustaining the trial court's factual finding this "newly discovered" evidence would not have made one iota of difference. The denial of the new trial motion was proper.

(Opinion at 23-26.)

The conclusion of the California Court of Appeal that the trial court did not violate petitioner's constitutional rights in denying his motion for new trial is not contrary to or an unreasonable application of clearly established federal law, nor is it based on an unreasonable

26

1    determination of the facts in light of the evidence presented in the state court proceeding.  For the

2    reasons expressed by the state appellate court, evidence that Courtney was under the influence of

3    methamphetamine during the events in question would not have changed the outcome of this trial

4    in light of the substantial cumulative evidence regarding Courtney's alcohol use on the day of the

5    crimes and her history of drug abuse.

6                                              CONCLUSION

7                    Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

8    a writ of habeas corpus be denied.

9                    These findings and recommendations are submitted to the United States District

10   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

11   days after being served with these findings and recommendations, any party may file written

12   objections with the court and serve a copy on all parties.  Such a document should be captioned

13   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

14   shall be served and filed within ten days after service of the objections.  The parties are advised

15   that failure to file objections within the specified time may waive the right to appeal the District

16   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

17   DATED: July 1, 2008.

18

19                                                   _____

20                                                   DALE A. DROZD
                                                     UNITED STATES MAGISTRATE JUDGE

21   DAD:8
     guerra1344.hc
22

23

24

25

26